1  JULIO J. RAMOS (SBN NO. 189944)
   ramosfortrustee@yahoo.com
2  LAW OFFICES OF JULIO J. RAMOS
   35 Grove Street, Suite 107
3  San Francisco, California 94102
   Telephone:    (415) 948-3015
4  Facsimile:    (415) 469-9787
5
   Attorney for Plaintiff Don Cheung DBA Computer 5000
6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

                                                CV 10 1794

11 | **Don Cheung DBA COMPUTER 5000**, on | Case No.:
   | behalf of himself and all others similarly |
12 | situated, |
   |                                          |
   |                     Plaintiff,           | **CLASS ACTION COMPLAINT**
13 |                                          |
   |          v.                              | **1.) Cartwright Act Section 16720**
14 |                                          | **Cal. Bus. Prof. Code; and**
   | **SONY CORPORATION;**                    | **2.) Unfair Competition Law Section**
15 | **SONY OPTIARC AMERICA INC.;**           | **17200 Cal. Bus. Prof. Code**
   | **SONY OPTIARC INC.;**                   |
16 | **SONY NEC OPTIARC INC.;**               |
   | **HITACHI, LTD.;**                       |
17 | **LG ELECTRONICS INC.;**                 |
   | **HITACHI-LG DATA STORAGE, INC.;**       |
18 | **TOSHIBA CORPORATION;**                 |
   | **SAMSUNG ELECTRONICS CO., LTD.;**       |
19 | **TOSHIBA SAMSUNG STORAGE**              |
   | **TECHNOLOGY CORPORATION;**              |
20 | **KNININKLIJKE PHILIPS ELECTRONICS**     |
   | **N.V.; LITE-ON IT CORP.; PHILIPS &**    |
21 | **LITE-ON DIGITAL SOLUTIONS CORP.;**     |
   | **and PHILIPS & LITE-ON DIGITAL**        |
22 | **SOLUTIONS, U.S.A.**                    |
   |                                          |
23 |                    Defendants.           | **JURY TRIAL DEMANDED**

24

25

26

27

28

                        CLASS ACTION COMPLAINT

Plaintiff Don Cheung doing business as Computer 5000, is an indirect purchaser of Optical Disk Drive Products as defined below, individually and on behalf of the Class described below, brings this class action against Defendants for damages under the California Cartwright Act and the Unfair Competition Law Section 17200 of the State of California, and hereby demands trial by jury. Plaintiff alleges that Defendants conspired to fix, raise, maintain, and stabilize the price of Optical Disk Drive Products sold in the United States during the Class Period as defined below, including through price-fixing, bid-rigging and market allocation. As a result of Defendants' unlawful conduct, Plaintiff and members of the proposed Class paid higher prices for Optical Disk Drive Products than they would have paid in a competitive market.

## NATURE OF THE ACTION

1. Sony, Toshiba and Hitachi alone account for about 60% of the United States market for optical disk drives used in computers and CD, DVD and Blue Ray players.

2. Optical disk drives are one of the largest growing markets in the electronics industry. In the State of California, almost all forms of home entertainment and data storage are on optical disks, either in CD format, DVD format, or now in Blu-Ray disc format. The Defendants and their co-conspirators in this case control over 90% of this multibillion dollar a year market. The defendants maintain substantial research and development facilities in the Silicon Valley of Northern California. Optical disk drives and the products derived from them are a substantial source of revenue for the Defendants. An investigation by the United States DOJ has been launched into the market for optical disk drives for anticompetitive conduct. These Defendants have a long history of engaging in anticompetitive conduct, having consistently sought to price fix a wide variety of products sold in the United States, such as Dynamic Random Access Memory ("DRAM"), Thin Film Transistor Liquid Crystal Display ("TFT-LCD") and Cathode Ray Tube ("CRT"). Through business meetings across the world, as well as at trade association meetings specific to their industry, these Defendants entered into an agreement and conspiracy to fix the price of Optical Disk Drives. When the price of ODD began to dip, the Defendants entered into an illegal agreement to prevent competitors from entering into the market and to keep prices at a supracompetitive level.

1

1    3.      This case arises out of a long-running conspiracy from at least October 1, 2005 until

2  the present ("the Class Period"), among Defendants and their co-conspirators, with the purpose and

3  effect of fixing, raising, maintaining and stabilizing prices for Optical Disk Drive Products sold

4  directly to Plaintiff and other direct-purchasers who purchased such products in California.

5    4.      Defendants, the leading manufacturers of optical disk drives, and their co-

6  conspirators formed an international cartel to illegally restrict competition in the Optical Disk Drive

7  Product market, which included targeting and burdening indirect purchasers who made purchases in

8  the California. During the Class Period, the conspiracy affected billions of dollars of commerce

9  throughout California. The conspiracy included communications and meetings in which

10  Defendants agreed to eliminate competition and fix the prices for Optical Disk Drive Products. As

11  a result of Defendants' price-fixing conspiracy, Plaintiffs have been injured in their business and

12  property by paying more for Optical Disk Drive Products than Plaintiffs otherwise would have paid

13  in the absence of Defendants' conspiracy.

14    5.      An optical disk drive is a disk drive that uses laser light (or electromagnetic

15  wavelength) to read and/or write data to or from an optical disk, such as a Compact Disc (CD), a

16  Digital Video Disc (DVD), or the more recently-developed Blu-Ray Disc (BD). Optical disk drives

17  are an integral part of stand-alone consumer electronics appliances such as CD players/recorders,

18  DVD players/recorders, and Blu-Ray Disc players/recorders that are used to store and play music

19  and movies. Optical disk drives are also widely used in computers to read and write data for a

20  variety of uses, including software programs and data compilations, and to store and play music and

21  video in much the same way as in stand-alone consumer electronics products with optical disk

22  drives. As a result, in computers, optical disk drives (along with flash memory drives) have largely

23  replaced "floppy" disk drives and the even-older tape drives that used magnetic disks or tapes to

24  record and store data. In consumer electronics, products with optical disk drives (e.g. CD players

25  and DVD players/recorders) have also displaced many of the consumer electronics products

26  previously used to record and play music and video (e.g. cassette decks, VCRs).

27    6.      As used herein, Optical Disk Drive Products include both optical disk drives (e.g.

28  CD drives, DVD drives, Blu-ray drives) manufactured by any of the named Defendants or their

1  affiliates, subsidiaries or co-conspirators, as well as products that contain optical disk drives (e.g.
2  DVD players, video game consoles like the Sony PlayStation 3, personal computers with DVD
3  drives) manufactured by any of the named Defendants or their affiliates, subsidiaries or co-
4  conspirators. Many of the Defendants are not only the major manufacturers and sellers of optical
5  disk drives, but they are also some of the largest manufacturers and sellers of computers and
6  consumer electronics products that contain optical disk drives.

7      7.      Plaintiff brings this action pursuant to Section 16720 of the California Business and
8  Professions Code. Defendants and their coconspirators acted in violation of Section 16720 to fix,
9  raise, stabilize and maintain prices of, and allocate markets for, Optical Disk Drive Products at
10  prices in excess of what they would have been absent Defendants' and their coconspirators conduct
11  as alleged herein.

12      7.      Plaintiffs also bring this action pursuant to California's Unfair Competition Law
13  Section 17200 of the California Business and Professions Code for violations of the California
14  Cartwright Act, the Federal Sherman Act and unfair, unlawful, unconscionable and fraudulent acts.

15      Except where specifically stated otherwise, all allegations herein are on information and
16  belief.

17  <div align="center">**JURISDICTION AND VENUE**</div>

18      8.      Jurisdiction of this Court is founded under the Class Action Fairness Act of 2005, as
19  the amount in controversy is over $5 million and pursuant to 28 USC Sections 1332(d), 1453, 1711-
20  1715.

21      9.      Venue as to defendants is proper in this district pursuant to 15 U.S.C. §§ 15(a), 22,
22  and 28 U.S.C. § 1391(b), (c), in that more than one defendant resides in the judicial district, is
23  licensed to do business and/or is doing business in this judicial district. The interstate trade and
24  commerce described herein has been carried out, in part, within this district.

25      10.    Defendants are subject to this Court's jurisdiction because of their nationwide
26  contacts and other activities, as well as their contacts and other activities with the State of
27  California.

28

**PARTIES**

**A.    Plaintiff**

11.    Plaintiff Don Cheung DBA as Computer 5000 ("plaintiff") resides in San Francisco, California. He is in the business of repairing, buying and selling computer products to small businesses and individuals through his store located at 5000 Geary Street in the City and County of San Francisco.

12.    During the Class Period, plaintiff indirectly purchased Optical Disk Drive Products from one or more Defendants or their controlled subsidiaries. As a result of the conspiracy, plaintiff has been economically injured in that the prices he paid for Optical Disk Drive Products have been artificially raised to anti-competitive levels by Defendants.

**B.    Defendants**

13.    Defendant **Sony Corporation** is a business entity organized under the laws of Japan, with its principal place of business located at 1-7-1, Konan, Minato-Ku, TKY 108-0075, Japan. During the Class Period, Sony manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

14.    Defendant **Sony Optiarc America Inc.**, formerly known as Sony NEC Optiarc Inc., is a wholly owned subsidiary of Sony Optiarc Inc. Sony Optiarc America Inc. is a Delaware corporation with its principal place of business located at 1730 N. First Street, San Jose, California 95112. Sony Optiarc America Inc. was originally established as a joint venture in April 2006 before Sony announced that it would take over NEC's 45% share on September 11, 2008. During the Class Period, Sony Optiarc America Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

15.    Defendant **Sony Optiarc Inc.** is a Japanese company with its headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. During the Class Period, Sony Optiarc Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

16.    Defendant **Sony NEC Optiarc Inc.** was a Japanese company with its headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. Defendant Sony NEC Optiarc Inc. was created on April 3, 2006 as a joint venture between defendants Sony Corp. and NEC Corp. in

4

1    which Sony Corp. had a 55% interest and NEC Corp. had a 45% interest. Sony Corp. purchased

2    NEC Corp.'s interest in Sony NEC Optiarc Inc. in 2008 and renamed it Sony Optiarc Inc. During

3    the Class Period, Sony NEC Optiarc Inc. manufactured, sold and/or distributed Optical Disk Drive

4    Products throughout the United States.

5        17.    Defendants Sony Corporation, Sony Optiarc America Inc., Sony NEC Optiarc Inc.,

6    and Sony Optiarc Inc. are referred to individually and collectively herein as **"Sony."**

7        18.    Defendant **Hitachi, Ltd.**, is a business entity organized under the laws of Japan with

8    its principal executive office at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280, Japan.

9    Hitachi, Ltd. controls an integrated global enterprise comprised of itself and other entities including

10   defendant Hitachi-LG Data Storage, Inc. During the Class Period, Hitachi, Ltd., manufactured, sold

11   and/or distributed Optical Disk Drive Products throughout the United States.

12       19.    Defendant **LG Electronics Inc. ("LG")** is a business entity organized under the laws

13   of Korea, with its principal place of business at 26/F Twin Tower South 20, Yeouido-Dong,

14   Yeoungdeungpo-Gu, Seoul, SEO 150-721, South Korea. LG controls an integrated global

15   enterprise comprised of itself and other entities including defendant Hitachi-LG Data Storage, Inc.

16   During the Class Period, LG manufactured, sold and/or distributed Optical Disk Drive Products

17   throughout the United States.

18       20.    Defendant **Hitachi-LG Data Storage, Inc.** is a business entity organized under the

19   laws of Japan with its principal place of business located at 4F MSC Center Building, 22-23 Kaigan

20   3-Chome, Minato-Ku, Tokyo, Japan, 108-0022. Hitachi-LG Data Storage, Inc. is a joint venture

21   formed in January 2001 and is owned 51% by defendant Hitachi and 49% by defendant LG. During

22   the Class Period, Hitachi-LG Data Storage, Inc. manufactured, sold and/or distributed Optical Disk

23   Drive Products throughout the United States.

24       21.    Defendant **Toshiba Corporation ("Toshiba")** is a business entity organized under

25   the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo

26   105-8001, Japan. Toshiba Corp. controls an integrated global enterprise comprised of itself and

27   other entities including defendant Toshiba Samsung Storage Technology Corp. During the Class

28

1 │ Period, Toshiba manufactured, sold and/or distributed Optical Disk Drive Products throughout the

2 │ United States.

3 │     22.    Defendant **Samsung Electronics Co. Ltd. ("Samsung")** is a business entity

4 │ organized under the laws of South Korea, with its principal place of business at Samsung Main

5 │ Building 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. Samsung controls an integrated

6 │ global enterprise comprised of itself and other entities including defendant Toshiba Samsung

7 │ Storage Technology Corp. During the Class Period, Samsung manufactured, sold and/or distributed

8 │ Optical Disk Drive Products throughout the United States.

9 │     23.    Defendant **Toshiba Samsung Storage Technology Corp.** is a business entity

10 │ organized under the laws of Japan with its principal place of business located at Solid Square 580,

11 │ Horikawacho, Saiwai-Ku, Kawasaki, KNG 212-0013, Japan. Toshiba Samsung Storage

12 │ Technology Corp. is a joint venture formed in 2004 and owned 51% by defendant Toshiba and 49%

13 │ by defendant Samsung. During the Class Period, Toshiba Samsung Storage Technology Corp.

14 │ manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

15 │     24.    Defendant **Koninklijke Philips Electronics N.V. ("Philips")** is a business entity

16 │ organized under the laws of The Netherlands, with its principal place of business at

17 │ Groenewoudseweg 1, Eindhoven 5621 BA, The Netherlands. Philips controls an integrated global

18 │ enterprise comprised of itself and other entities including defendant Philips & Lite-On Digital

19 │ Solutions Corporation. During the Class Period, Philips manufactured, sold and/or distributed

20 │ Optical Disk Drive Products throughout the United States.

21 │     25.    Defendant **Lite-On IT Corporation ("Lite-On")** is a business entity organized

22 │ under the laws of Taiwan, with its principal place of business at 12-15F, 392, Jui Kuang Road,

23 │ Taipei City, TAP 11492, Taiwan. Lite-On controls an integrated global enterprise comprised of

24 │ itself and other entities including defendant Philips & Lite-On Digital Solutions Corporation.

25 │ During the Class Period, Lite-On manufactured, sold and/or distributed Optical Disk Drive Products

26 │ throughout the United States.

27 │     26.    Defendant **Philips & Lite-On Digital Solutions Corporation** is a business entity

28 │ organized under the laws of Taiwan, and a joint venture between Koninklijke Philips Electronics

1  N.V. and Lite-On IT Corporation established in March 2007, with its principal place of business

2  located at 16F, 392, Jui Kuang Road, Taipei City, TAP 11492, Taiwan.  During the Class Period,

3  Philips & Lite-On Digital Solutions Corporation manufactured, sold and/or distributed Optical Disk

4  Drive Products throughout the United States.

5       27.    Defendant **Philips & Lite-On Digital Solutions USA, Inc.** is a Delaware

6  corporation with its principal place of business located at 42000 Christy Street, Fremont, California

7  94538.  During the Class Period, Philips & Lite-On Digital Solutions USA manufactured, sold

8  and/or distributed Optical Disk Drive Products throughout the United States.

9       28.    On information and belief, other partnerships, corporations, or other business

10  entities, unknown to Plaintiff, are co-conspirators with Defendants in their unlawful restraint of

11  trade.  These other co-conspirators have facilitated, adhered to, participated in, and/or

12  communicated with others regarding the conspiracy.

13       29.    The conduct alleged herein was Defendants' conduct or actions ordered or done by

14  Defendants' officers, agents, employees, or representatives, while engaged in the usual management

15  of Defendants' business.

16  ## AGENTS AND CO-CONSPIRATORS

17       30.    Various persons that are not named as Defendants herein have participated as co-

18  conspirators in the violations alleged herein and have performed acts and made statements in

19  furtherance thereof.  Plaintiffs reserve the right to name some or all of these persons as Defendants

20  at a later date.

21       31.    Whenever in this complaint reference is made to any act, deed or transaction of any

22  corporation, the allegation means that the corporation engaged in the act, deed or transaction by or

23  through its officers, directors, agents, employees or representatives while they were actively

24  engaged in the management, direction, control or transaction of the corporation's business or

25  affairs.

26       32.    Defendants are also liable for acts done in furtherance of the alleged conspiracy by

27  companies they acquired through mergers and acquisitions.

28

1    33.    Each of the Defendants named herein acted as the agent of, co-conspirator with, or

2    joint venturer of the other Defendants with respect to the acts, violations and common course of

3    conduct alleged herein. Each Defendant that is a subsidiary of a foreign parent acts as the United

4    States agent for Optical Disk Drives and/or Optical Disk Drive Products made by its parent

5    company.

6                              **CLASS ACTION ALLEGATIONS**

7    34.    Plaintiff brings this action both on behalf of himself, and as a class action pursuant to

8    Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following class (the

9    "Class").

10       All individuals and entities who, during the period from October 1, 2005 through
         the present (the "Class Period"), who purchased Optical Disk Drive Products in
11       the State of California indirectly from the defendants or their subsidiaries.
         Excluded from the Class are defendants and their parents, subsidiaries, affiliates,
12       and all governmental entities.

13   35.    The Class is so numerous that joinder of all members is impracticable. Due to the

14   nature of the trade and commerce involved, Plaintiff believes that the members of the Class are

15   geographically dispersed throughout the United States, and that joinder of all Class members would

16   be impracticable. While the exact number of Class members is unknown to Plaintiff at this time,

17   Plaintiff believes that there are, at least, thousands of members of the Class and that their identities

18   can be learned from Defendants' books and records.

19   36.    Plaintiff's claims are typical of the claims of the other members of the Class because

20   plaintiff indirectly purchased Optical Disk Drive Products distributed by the defendants.

21   37.    Plaintiff and the members of the Class indirectly purchased Optical Disk Drive

22   Products at artificially maintained, non-competitive prices established by the actions of Defendants

23   and their unnamed co-conspirators in connection with the restraint of trade alleged herein. Plaintiff

24   and the members of the Class have all sustained damage in that they paid inflated prices for Optical

25   Disk Drive Products due to Defendants' conduct in violation of federal law as complained of herein.

26   38.    Plaintiff will fairly and adequately protect the interests of the members of the Class

27   and has retained counsel competent and experienced in class action and antitrust litigation.

28

1    39.    Defendants have acted or refused to act on grounds generally applicable to the class,

2  thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to

3  the Class as a whole.

4    40.    Common questions of law and fact exist as to all members of the Class and

5  predominate over any questions solely affecting individual members of the Class. Among the

6  questions of law and fact common to the Class are:

7    (a)    Whether Defendants engaged in a contract, combination or conspiracy among

8           themselves to fix, maintain, or stabilize the price of Optical Disk Drive

9           Products sold in the United States;

10   (b)    Whether the conduct of Defendants caused the prices of Optical Disk Drive

11          Products to be artificially inflated;

12   (c)    Whether defendants engaged in a contract, combination, and/or conspiracy to

13          restrict output of ODD Products sold in California;

14   (d)    Whether Defendants' conduct caused injury to the members of the Class and,

15          if so, the proper measure of damages;

16   (e)    Whether plaintiff and the other members of the Class are entitled to, among

17          other things, injunctive relief, and if so, the nature and extent of such

18          injunctive relief; and

19   (f)    Whether Defendants undertook actions to conceal the unlawful contract,

20          combination or conspiracy described herein.

21   41.    A class action is superior to other available methods for the fair and efficient

22  adjudication of this controversy since joinder of all Class members is impracticable. The

23  prosecution of separate actions by individual members of the Class would impose heavy burdens

24  upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of

25  the questions of law and fact common to the Class. A class action would achieve substantial

26  economies of time, effort and expense, and would assure uniformity of decision as to persons

27  similarly situated without sacrificing procedural fairness.

28   42.

9

1

## INTERSTATE TRADE AND COMMERCE

2      43.     During the Class Period, each Defendant, or one or more of its subsidiaries, sold

3  Optical Disk Drive Products in the United States in a continuous and uninterrupted flow of

4  interstate commerce and foreign commerce, including through and into this judicial district.

5      44.     During the Class Period, Defendants collectively controlled a majority of the market

6  for Optical Disk Drive Products, globally, in the United States and within this district.

7      45.     The business activities of the Defendants substantially affected interstate trade and

8  commerce in the United States and caused antitrust injury in the United States.

9      46.     Sony Optiarc Inc., had sales of $1.52 billion for the year ended March 2008, the last

10  year for which Sony disclosed the unit's annual revenue.

11      47.     Hitachi-LG Data Storage had revenue of $2.4 billion in 2005, the last year for which

12  figures are available, while Toshiba Samsung Storage forecast revenue of 250 billion yen in fiscal

13  2004 when it was established.

14      48.     Samsung in 2008 estimated that the optical disk drive market for personal computers

15  is 313 million units per year and the optical disk drive market for all other applications (e.g.,

16  automotive audio and video, personal video recorders, set top boxes, CD/ DVD players and

17  recorders, camcorders, and game consoles) is 200 million units per year.

18

## FACTUAL ALLEGATIONS

19  **A.     Optical Disk Drive Technology**

20      49.     Optical discs contain microscopic pits where data are stored. These pits are made

21  from a crystalline metal alloy and are usually pressed into the disc in a spiral arrangement, starting

22  at the center of the disc. Once a disc containing information is inserted into the optical disk drive,

23  the disc spins while a lens inside the device guides a semiconductor laser beam over the disc and a

24  photodiode detects the light reflected from the disc's bumps and pits. The laser moves outward

25  from the center of the disc, scanning over the disc's surface. Then the photodiode reads the light's

26  reflection as a binary code (a series of ones and zeros) that the computer translates into usable data.

27  Changes in the intensity of the beams as the lasers hit the pits are detected and translated into

28  electrical signals. The more pits that can be packed onto the disc, the more data the disc can store.

1   The pits are approximately 0.8 micrometers on CDs, 0.4 micrometers on DVDs, and 0.15

2   micrometers on BDs. Reading the different disc formats requires the optical disk drive to have

3   lasers of different wavelengths. Blu-ray disc players use a shorter wavelength laser, which is blue-

4   violet, to read discs. Additional layers can be added to the disc as well, increasing storage capacity.

5   In addition to reading discs, optical disk drives can write and rewrite on the disc, depending on the

6   technology of the drive and accompanying disc.

7       50.     When a recordable disc (e.g., CD-R, DVD-R or BD-R) is inserted into an optical

8   disk drive that has the ability to record data, the optical disk drive's laser is used to selectively heat

9   parts of the organic photosensitive dye layer. By exposing the disc to light with the laser, the

10  reflective properties of the disc's surface change, which causes the photodiode to recognize these

11  changes as bumps and pits and read the new information on the disc.

12      51.     Optical disk drives include half-height and slim models. Half height optical disk

13  drives are thicker and generally incorporated into desktop computer towers. Slim optical disk

14  drives are thinner and generally incorporated into laptop computers. As laptop computers have

15  become more popular with consumers, demand for slim optical disc drives has increased and is

16  expected to overtake half-height demand over the next five years. An optical disk drive is a disk

17  drive that uses laser light or electromagnetic waves as part of the process of reading or writing data

18  to or from optical disks. Some drives can only read from disks, but other recent drives are

19  commonly both readers and recorders. Recorders are sometimes called "burners" or "writers."

20  Compact discs, DVDs, and Blu-Ray disks are common types of optical media which can be read

21  and recorded by optical disk drives.

22      52.     An optical drive is about the size of a thick book. The front of the drive has a small

23  Open/Close button that ejects and retracts the drive bay door. This is how media like CDs, DVDs,

24  and BDs are inserted into and removed from the drive. Where the disc drive is intended for internal

25  use in a computer, the sides of the drive have pre-drilled, threaded holes for easy mounting in the

26  drive bay in the computer case. In that case, the optical drive is mounted so the end with the

27  connections faces inside the computer and the end with the drive bay faces outside. The back end

28  of the optical drive generally contains a port for a cable that connects to the motherboard. Also here

1   is a connection for power from the power supply. Most optical drives also have jumper settings on

2   the back end that define how the motherboard is to recognize the drive when more than one is

3   present. These settings vary from drive to drive.

4   **B.**   **Industry Background**

5       53.     The optical disk was invented in 1958. In 1961 and 1969 patents were registered for

6   the analog optical disk for video recording. In 1969 Philips began their first optical videodisk

7   experiments. The first optical disk drive was invented with the creation of the audio compact disc

8   (audio "CD"), which was jointly invented by Sony and Philips Electronics ("Philips") and intended

9   to store analog video signals and store music and computer software. In 1972, Philips announced a

10   technique for storing audio recordings on an optical disc with a small diameter. At the same time,

11   Sony was exploring optically recording audio on a larger disc but was focusing on developing an

12   error correction technique. In 1978, Sony and Philips agreed on a single format for the disc and the

13   error correction method that would be used. The compact disc system was introduced to the public

14   in Japan and Europe in 1982. Since the 1980s, several companies have created spin-offs of the CD

15   project by covering specific CD-based applications and extending the previously established

16   standards set by Sony and Philips.

17       54.     According to reporters who cover the Optical Disk Drive Products market, the

18   history of the industry, "although short, has been intense." The first-generation of optical disk

19   drives used CDs that could store 650 megabytes of data, but for several years the CDs were

20   available only in a read-only format (e.g. CD-ROMs). Once the standard of how to create a CD and

21   an optical device that reads the information on the CD were established, CD-ROM drives began to

22   penetrate the computer market. Optical disc drives have been in common use in computers since

23   the 1990s, when CD-ROM drives became affordable for the average consumer. In the mid-1990s, a

24   consortium of manufacturers developed the second generation of the optical disk, the DVD. The

25   second-generation of drives used DVDs that could store 4.7 gigabytes, but DVDs were more

26   quickly available in both a read-only format (e.g. DVD-ROMs) and a format that allowed both

27   reading and recording (e.g. DVD-RWs, DVD-RAMs). The DVD was intended to store great

28   amounts of data, including broadcast quality digital video. Optical disk drives using DVDs are

1 currently the most prevalent in both consumer electronics products and computers, but DVD drives
2 are now being replaced by the third-generation of optical disk drives.

3      55.     The third-generation of drives use Blu-Ray Discs (BDs) that can store in excess of
4 20 gigabytes, and also have both read-only and read/record formats. (Toshiba developed and
5 promoted a High-Definition ("HD")-DVD format for third-generation optical disk drives, but in
6 June 2008 Toshiba announced that it would no longer develop or manufacture optical disk drive
7 using HD-DVDs, and would instead use the Blu-Ray Disc format developed and promoted by
8 Sony.) In 2006, the specifications for the third generation optical disc, the Blu-Ray Disc format,
9 was finalized. The Blu-ray standard was developed by the Blu-Ray Disc Association, an industry
10 group which included makers of consumer electronics, computer hardware, and motion pictures.
11 The Blu-Ray format was designed to supersede the DVD format and dramatically improve on the
12 quality and capacity of the DVD. The Blu-Ray optical disc was meant to be able to distribute high-
13 definition video and support greater data storage capacity than the DVD. Afterwards,
14 manufacturers began to develop optical disc drives for computers that could read and write both
15 DVDs and Blu-Ray discs. The third generation optical disks, Blu-ray and HD-DVD began in
16 development in 2000 and were meant for distributing high-definition video and support greater data
17 storage capacities.

18      56.     Throughout the industry's history, but especially after 2000, the optical disk drive
19 market, which requires significant technical resources and advanced manufacturing capabilities, has
20 been dominated by a small group of manufacturers. The industry has also consistently been faced
21 with downward pricing pressures, including those resulting from the technological advances in
22 optical disk drive technology described above. As the defendants hone their ability to manufacture
23 these Optical Disk Drive Products more efficiently and at a lower cost, the price of this technology
24 invariably begins to decline. However, the defendants, sensing that the price of Optical Disk Drive
25 Products was declining, decided to collude and enter into a price fixing agreement in order to
26 prevent prices from dropping too far.

27      57.     Today, optical disk drives are a standard component on almost every computer used
28 in the United States. Due to the increasing popularity of personal computers, hundreds of millions

13

1 of optical disk drives and Optical Disk Drive Products are shipped by defendants each year,

2 generating billions of dollars in annual revenues. According to an IDC analysis, between 2004 and

3 2008, worldwide optical disk drive shipments generated over $45 billion in revenues. Digitimes

4 research estimates that worldwide optical disk drive shipments increased at an annual rate of

5 approximately 10%, exceeding 300 million by 2007. Between 2004 and 2008, the sale of Optical

6 Disk Drive Products generated over $45 billion in revenues. According to Gartner, by 2013, the

7 optical disk drive market will grow to $3.9 billion. Since the optical disk drives market is

8 dominated by a group of manufacturers and it is oligopolistic in nature, the market is conducive to

9 the collusive conduct alleged herein.

10     58.     Optical disk drives are an integral part of stand-alone consumer electronics

11 appliances such as CD players, DVD players/recorders, and Blu-Ray Disc players that are used to

12 play (and record) music and movies. Following are pictures of consumer electronics products that

13 contain optical disk drives:

14     59.     Optical disk drives, such as CD-ROM (read-only memory) drives and DVD-RW

15 (read/write) drives, are also widely used in computers to read and write data for a variety of uses,

16 including software programs and data compilations, as well to store and play music and video in

17 much the same way as in stand-alone consumer electronics products with optical disk drives.

18 Computer like this one contain optical disk drives:

19     60.     Defendant Sony's President and Electronics CEO, Ryobi Chubachi, stated after the

20 signing of a Memorandum of Understanding between Sony and NEC in 2005 that "Optical disc

21 drives are key components for a broad range of devices and we are strategically focused our

22 development resources in this sector." NEC's President Akinobu Kanasugi added that, "The market

23 for high value-added drives to be integrated into PCs and consumer electronics products is rapidly

24 expanding."

25     61.     As the Optical Disk Drives Products market has changed, the Defendants have

26 consistently remained leaders in the industry as a result of their conspiratorial acts. While the

27 market for CD-ROMs has decreased, the market for Blu-Ray discs has grown exponentially as

28 consumers shift towards the new format. In a 2008 consumer survey, 56% of customer respondents

14

1 || would consider purchasing a Blu-Ray disc player if there was a significant price drop. The

2 || Defendants, acting in a non-conspiratorial manner, would have slashed their prices in an effort to

3 || obtain as large a share of the market as possible. However, by entering into a price-fixing

4 || agreement, each of the Defendants would be able to hold steady on their market share without any

5 || significant price reductions.

6 || **C.     Opportunity for Collusion**

7 ||     62.     During the Class Period, the optical disk drive industry has experienced several

8 || factors that have contributed to the opportunity for defendants and their co-conspirators to carry out

9 || their conspiracy, including but not limited to: (1) market concentration, (2) joint venture

10 || collaborations; (3) significant barriers to entry; (4) common trade associations and business

11 || organizations; and (5) the standardization of Optical Disk Drive Products.

12 ||     **i.     Market Concentration and Joint Ventures**

13 ||     63.     Since the Optical Disk Drive Products market is dominated by a group of

14 || manufacturers and it is oligopolistic in nature, the market is conducive to the collusive conduct

15 || alleged herein. According to published reports, during the Class Period, the Optical Disk Drive

16 || Products industry has been dominated by Defendants and their Co-Conspirators. During the Class

17 || Period the joint venture between Hitachi and LG Electronics, Hitachi-LG Data Storage, had a 27%

18 || market share; the joint venture between defendants Toshiba and Samsung, defendant Toshiba

19 || Samsung Storage Technology had a 20% market share; defendant Sony Optiarc America had a 17%

20 || market share; and Co-Conspirator Philips & Lite-On Digital Solutions Corporation had a 30%

21 || market share. Together these defendants and Co-conspirators control over 90% of the global

22 || market for Optical Disk Drive Products.

23 ||     **ii.     Joint Venture Collaboration**

24 ||     64.     In October of 2000 Hitachi, Ltd., and LG Electronics Inc. joined together to form

25 || Hitachi-LG Data Storage, Inc. ("HLDS"), a joint venture company for the development, design and

26 || marketing of optical disk drives. HLDS is majority owned by Hitachi in a 51/49 percent equity split

27 || with its headquarters in Tokyo.

28

65.     In April of 2003 Samsung Electronics and Toshiba Corporation signed a memorandum of understanding. In January 2004 Samsung and Toshiba concluded an agreement to integrate their optical disk drive businesses into a single entity. In April 2004 Toshiba Samsung Storage Technology Corp and its Korean subsidiary were launched to develop, market and design optical disk drives.

66.     In April of 2006, Sony Corporation and NEC Corporation joined forces to create Sony NEC Optiarc Inc. At the formation of the joint venture, Sony had a 55% equity share and NEC 45% and was projected to capture 20% of the optical disk drive market. On September 11, 2008, Sony purchased NEC Corp.'s interest in Sony NEC Optiarc, Inc., and renamed it Sony Optiarc, Inc.

67.     In 2006, Lite-On IT acquired BenQ's Optical Disc Drive business to become the second largest optical disc drive manufacturer in the world. Lite-On bought out the BenQ shares under the deal and the joint venture was renamed Philips & Lite-On Digital Solutions.

68.     The joint ventures of each of these companies allowed them to share and have access to each of their parent companies patents and technologies without the need to pay royalties.

### iii.     Barriers to Entry

69.     There are significant manufacturing and technological barriers to entry into the optical disk drive industry. In order to compete in the optical disk drive industry, companies have to spend hundreds of millions of dollars in research and development, licensing, and manufacturing of products. Moreover, the ownership and control exerted by defendants over Optical Disk Drive Product technology and market share has allowed defendants to dictate who enters the market and at what cost. These barriers to entry have made it extremely difficult for smaller manufacturers of Optical Disk Drive Products to compete with defendants and overcome the effects of economies of scale. Accordingly, the financial structure of the optical disk drive industry allowed defendants to implement their antitrust conspiracy by eliminating competition and artificially stabilizing the prices of Optical Disk Drive Products without losing market share.

70.     Price-fixing and market allocation are easier to attain within a highly

1    concentrated, fungible market for which adequate substitutes do not exist. All of these factors

2    facilitate the implementation and maintenance of an antitrust conspiracy such as that perpetrated

3    by Defendants and alleged herein. The facts do not support a finding of conscious parallelism.

4    Instead, it is evident from the facts that Defendants communicated and conspired to the

5    detriment of consumers of Optical Disk Drive Products.

6            **iv.    Trade Associations and Business Organizations**

7            71.    Defendants acted to prevent downward pricing pressures from causing Optical Disk

8    Drive Products to be sold at truly competitive prices, through means including price-fixing, bid-

9    rigging and market allocation.

10           72.    Various industry trade organizations or events facilitated Defendants' Optical Disk

11   Drive Products cartel activities. Defendants participated in many of those meetings and events to

12   discuss Optical Disk Drive Products pricing and production with the purpose and effect of raising,

13   fixing and stabilizing Optical Disk Drive Products prices. Such meetings occurred at or through the

14   following industry trade associations and events:

15           73.    The Optical Storage Technology Association (OSTA), an international trade

16   association formed in 1992 to promote the use of recordable optical technologies and products, and

17   whose membership includes optical product manufacturers who represent more than 85 percent of

18   worldwide writable optical product shipments, including LG and Sony.

19           74.    The last meeting of the OSTA took place between March 16-18, 2009 at the Pacific

20   Business Centers at 19925 Stevens Creek Blvd, Cupertino, CA 95014. At that meeting, in which

21   the Defendants were present, they were able to meet and communicate regarding the price-fixing

22   conspiracy. Under the guise of an industry forum, the Defendants exchanged sensitive price

23   information and ensured that all of them charged the same price for Optical Disk Drive Products.

24           75.    The DVD Forum, a global group of hardware manufacturers, software firms and

25   content providers formed in 1997 to promote and improve standards for the DVD format and

26   products associated with that format. Hitachi, LG, Lite-On, NEC, Philips, Samsung, Sony, and

27   Toshiba are all members of the DVD Forum.

28

76.     The Steering Committee of the DVD Forum last met on September 10, 2009 at the Universal Hilton Hotel in Los Angeles, California. Defendant Toshiba was the chair of that Steering Committee meeting. At that meeting, the members of the conspiracy and other co-conspirators communicated with each other about the conspiracy and agreed to continue to fix the price of Optical Disk Drive Products sold across the world, including in the United States.

77.     The Blu-ray Disc Association, a worldwide group formed in 2005 to promote the Blu-ray Disc format and products associated with that format, with members including Hitachi, LG, NEC, Philips, Samsung, Sony, Toshiba.

78.     Defendants Sony, LG, and Hitachi are all founding board members of the Blu-ray Disc Association which is an industry consortium that develops and licenses Blu-ray Disc Technology. The Blu-ray Disc Association was established by the defendants to establish standardized formats and cross license technology.

79.     Defendants Sony, LG, Hitachi, and Samsung all participated in the first meeting of Blu-ray Disk patent owners in Los Angeles, California on July 6-7, 2006. The stated purpose of the event was to create joint licensing agreements amongst the participating optical disk drive manufacturers.

80.     The International Consumer Electronics Show, the world's largest consumer electronics show, held annually. The 2010 International Consumer Electronic Show took place from January 7-10, 2010 at the Venetian in Las Vegas, Nevada. One of the topics of conversation at the show was the DOJ investigation into the Optical Disk Drive Products. Members of the conspiracy communicated with each other about the conspiracy during the 2010 International Consumer Electronics Show.

81.     The Optical Storage Symposium (OSS), a worldwide conference held annually from 2001-07.

82.     The conduct of the "business" of these organizations gave Defendants and their co-conspirators the cover needed to contact one another to communicate competitive information.

**v.      Standardization of Optical Disk Drive Products**

83.     Since its inception in the 1970s, the optical disk drive industry has been typified by

1 | standardization of discs (e.g., CD-ROMs, DVD-ROMs) and Optical Disk Drive Products driven by

2 | industry participants and a variety of industry-related organizations such as ECMA International,

3 | the International Standardization Organization ("ISO"), and the International Electrotechnical

4 | Commission ("IEC"). These organizations and their members are dedicated to "standardizing the

5 | use of information communication technology and consumer electronics."

6 | 84. The optical disk drive industry is also subject to patents and intellectual property

7 | rights which require adoption of standardized product specifications.

8 | 85. The standardization of the Optical Disk Drive Products industry provided defendants

9 | with the mechanism to implement, enforce, and oversee their anticompetitive conspiracy to fix the

10 | price of Optical Disk Drive Products. Furthermore, as a result of this standardization, Optical Disk

11 | Drive Products are commodity products, and buyers make decisions to purchase such products

12 | based largely, if not exclusively, on price.

13 | **D. History of Collusion**

14 | **i. Previous Antitrust Violations**

15 | 86. Defendants have been the subject of multiple government investigations for their

16 | cartel activity in recent years. For example, Samsung admitted guilt and paid a $300 million fine

17 | following an investigation by the DOJ into price-fixing among manufacturers of dynamic random

18 | access memory ("DRAM") computer chips.

19 | 87. Many of the Defendants named herein, have a long history of collusion, and, are

20 | either currently involved in worldwide investigations into other technology-related products, or

21 | have admitted to participating in cartels involving technology-related products.

22 | 88. In November of 2007, the EU fined Sony and various related entities and the Hitachi

23 | Maxell Limited joint venture $110 million for fixing the prices of professional videotapes sold in

24 | Europe between 1999 and 2002. Similarly, Hitachi and Toshiba were fined by the European

25 | Commission for their roles in a conspiracy to control prices and allocate market shares in the market

26 | for gas-insulated switchgear between 1988 and 2004.

27

28

1    89.    More recently, the DOJ and the European Commission ("EC") have commenced

2    investigations of Samsung, Toshiba, LG and Hitachi, among others, concerning collusion among

3    manufacturers of thin-film transistor liquid crystal displays ("TFT-LCDs").

4    90.    In December of 2008, the Department of Justice ("DOJ") announced that LP

5    Display, a joint venture between LG and Philips, would plead guilty to a DOJ indictment alleging

6    antitrust price-fixing allegations with respect to TFT-LCDs. It has agreed to pay a \$400 million fine.

7    91.    On March 10, 2009, the DOJ announced that Hitachi Displays had pled guilty to

8    participation in the price-fixing conspiracy involving TFT-LCDs and had agreed to pay a \$31

9    million fine.

10    92.    Although it has not been publicly acknowledged by Samsung, it is widely believed

11    that defendant Samsung Electronics Co. Ltd. is in the U.S. DOJ leniency program with respect to

12    the DOJ's investigation into the market for TFT-LCD, meaning that it has admitted its participation

13    in the cartel. The TFT-LCD investigation is ongoing, and Toshiba Corporation, as well as other

14    entities, remain under investigation. Such criminal investigation is being conducted by the San

15    Francisco office of the DOJ's Antitrust Division.

16    93.    As in the TFT-LCD industry, many of the defendants here are not just the major

17    manufacturers and sellers of the price-fixed product, but they are also the major manufacturers and

18    sellers of the consumer electronics and computer products that contain the price-fixed product. For

19    example, the LG and Samsung entities manufactured and sold both TFT-LCD panels as well as

20    TFT-LCD flat panel televisions. Here LG and Samsung (and Hitachi, Toshiba, Philips, Lite-On and

21    Sony) manufacture and sell both optical disk drives (e.g. DVD drives) and finished products

22    containing those drives (e.g. DVD players, laptop computers).

23    94.    On October 7, 2009 in a cease and desist order, The Japan Fair Trade Commission

24    levied \$37.4 million in fines against five companies, including LG Philips Displays Korea Co. and

25    an arm of South Korea's Samsung group and their affiliates for alleged participation in a price-

26    fixing cartel for cathode ray tubes.

27    95.    The optical disk drive industry has a similar oligopoly structure to that of the TFT-

28    LCD, DRAM and CRT industries. The Defendants' entry into price-fixing agreements in those

1  markets (which include many of the same foreign players) supports the DOJ's investigation and

2  other evidence showing the existence of an anticompetitive conspiracy in the Optical Disk Drive

3  Products market.

4      96.    The established illegal conduct of Hitachi, LG and Samsung (as well as Philips and

5  Sony) in a wide variety of product markets across the world, including the United States, is

6  illustrative of Defendants' respective corporate cultures which encourage illegal activities aimed at

7  furthering the company's bottom line at the expense of consumers.

8      97.    For example, in November of 2007, Kim Yong Chul, the former chief lawyer for

9  Samsung, admitted that the company "instructed me to commit crimes." Chul continued, "[a] basic

10  responsibility for all Samsung executives is to do illegal lobbying, buying people with money."

11  Chul also acknowledged that he fabricated court evidence on behalf of the company and its

12  executives, and several Samsung executives have recently been convicted of bribery and other

13  white collar crimes.

14      **ii.    Antitrust Violations concerning Optical Disk Drive Products**

15      98.    Recently, defendants disclosed and news organizations reported that there is

16  currently a worldwide investigation by antitrust enforcement authorities into violations of antitrust

17  laws and other anticompetitive practices into the market for optical disk drives. In October of 2009,

18  the United States DOJ acknowledged that it had commenced an investigation into anticompetitive

19  conduct in the optical disk drive industry, and that in connection with that investigation it had

20  served subpoenas on defendants Sony Optiarc America, Hitachi-LG, and TSST. At the same time,

21  at least one defendant acknowledged that foreign antitrust enforcement agencies were also

22  investigating the optical disk drive industry.

23      99.    For example, on October 23, 2009, Sony Corporation disclosed the following in a

24  Form 6-K it filed with the SEC:

25      Sony Corporation said today that its U.S. subsidiary, Sony Optiarc America Inc.,
    has received a subpoena from the U.S. Department of Justice (DOJ) Antitrust

26      Division seeking information about its optical disk drive business. Sony
    understands that the DOJ and agencies outside the United States are investigating

27      competition in optical disk drives.

28

1  On October 26, 2009, news sources reported that other companies, including Toshiba, Hitachi,

2  Samsung and LG have received DOJ subpoenas. According to one of the news articles, an

3  unnamed "source said the department began the probe in recent months, investigating disk-drive

4  makers for possible price-fixing, bid-rigging and allocation of markets."

5      100.    Sony has acknowledged that it believes the request for information from the U.S.

6  Department of Justice is part of a wider review of competition in the disk drive market by the DOJ

7  and competition authorities in other countries.

8      101.    On October 27, 2009, Hitachi Ltd. and Toshiba Corporation confirmed that, like

9  Sony Corporation, their optical disk drive operations in the United States received subpoenas from

10 the U.S. Department of Justice in a widening investigation into potential antitrust violations.

11 Additionally, they acknowledged that they were also under investigation by European Union and

12 Singaporean antitrust regulators.

13     102.    On October 27, 2009, a United States DOJ spokeswoman, Gina Talamona confirmed

14 that, "[t]he antitrust division is investigating the possibility of anticompetitive practices in the

15 optical disc drive industry."

16     103.    In its 2009 annual report Philips revealed that it and PLDS are also the subject of

17 international investigations. The report stated:

18     On October 27, 2009, the Antitrust Division of the United States
   Department of Justice confirmed that it had initiated an investigation into possible
19     anticompetitive practices in the Optical Disc Drive (ODD) industry. Philips Lite-
   On Digital Solutions Corp. (PLDS), a joint venture owned by the Company and
20     Lite-On IT Corporation, as an ODD market participant, is included in this
   investigation. PLDS is also subject to similar investigations outside the US
21     relating to the ODD market. PLDS and Philips intend to cooperate with the
   authorities in these investigations.
22

23     104.    On October 28, 2009, it was announced that two of the major players in the Optical

24 Disk Drive Products market, Sony and Philips, were fined by the a foreign antitrust enforcement

25 agency, the Taiwan Fair Trade Commission, for their anticompetitive business practices in

26 connection with their abuse of monopoly power in the licensing of the technology for CD-Rs, the

27 discs that go into optical disk drives.

28

105. It is significant that defendants' anticompetitive behavior has been the subject of a criminal grand jury investigation by the DOJ. In order for the DOJ to institute a grand jury investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed and prepare a detailed memorandum to that effect. *See* Antitrust Grand Jury Practice Manual, Vol. 1, Ch. I.B.1 ("[i]f a Division attorney believes that a criminal violation of the antitrust laws has occurred, he should prepare a memorandum requesting authority to conduct a grand jury investigation.") Furthermore, following a review of the memorandum, the request for a grand jury must be approved by the Assistant Attorney General for the Antitrust Division, based on the standard that a criminal violation may have occurred. *See id.* In addition, the fact that the DOJ Antitrust Division investigation is criminal, as opposed to civil, is significant as well. The Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal Investigation" state: "[i]n general, current Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, per se unlawful agreements such as price fixing, bid rigging and horizontal customer and territorial allocations." *See* Antitrust Division Manual, Chapter III.C.5. Accordingly, the existence of a criminal investigation into the ODD industry supports the existence of the conspiracy alleged herein.

106. On or about October 1, 2005, the exact date being unknown to plaintiff, Defendants entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

107. Defendants participated in meetings and conversations to discuss the price of Optical Disk Drive Products sold in the United States.

108. Defendants agreed during those meetings and conversations to charge prices at specified levels and otherwise to fix, increase, stabilize and/or maintain prices of Optical Disk Drives sold in the United States.

109. Defendants agreed to sell Optical Disk Drive Products at the agreed upon prices.

110. Defendants sold Optical Disk Drive Products to various customers throughout the United States at artificially inflated prices.

111. The conspiracy alleged herein had and continues to have the following effects, among others.

112. As a result of the illegal conspiracy, prices charged to plaintiff and the Class for Optical Disk Drive Products have been raised, fixed, maintained or stabilized at artificially inflated, non-competitive levels.

113. As a result of the illegal conspiracy, plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for Optical Disk Drive Products.

114. As a result of the illegal conspiracy, competition in establishing the prices paid in the United States and worldwide for Optical Disk Drive Products has been unlawfully restrained, suppressed and eliminated.

115. By reason of the violations of Section 1 of the Sherman Act and Section 4 of the Clayton Act, plaintiff and the members of the Class have sustained injury. As a direct result of Defendants' conduct, the injury sustained by plaintiff and the Class is the payment of supracompetitive prices for Optical Disk Drive Products. This is an antitrust injury of the type that the federal laws were meant to punish and prevent.

## FRAUDULENT CONCEALMENT

116. Plaintiff and members of the Class did not discover and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until October 26, 2009 when it was first publicly reported that manufacturers of optical disk drives were under investigation by antitrust authorities in the United States, and elsewhere in the world, for anticompetitive conduct.

117. Because Defendants' agreements, understandings, and conspiracies were kept secret until October 26, 2009, Plaintiff and members of the Class before that time were unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time that they were paying artificially high prices for Optical Disk Drive Products throughout the United States during the Class period.

118. The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

1      119.    By their very nature, Defendants' price fixing conspiracy was inherently self-

2 concealing. The optical disk drives industry is not exempt from antitrust regulation, and thus,

3 before October 26, 2009, Plaintiff reasonably considered it to be a well-regulated competitive

4 industry.

5      120.    In the context of the circumstances surrounding Defendants' pricing practices,

6 Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable

7 person that Defendants' pricing was conspiratorial. Accordingly, a reasonable person under the

8 circumstances would not have been alerted to investigate the legitimacy of Defendants' Optical

9 Disk Drive Products prices before October 26, 2009.

10      121.    Plaintiff and members of the Class could not have discovered the alleged contract,

11 conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the

12 deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators

13 to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

14      122.    Because the alleged conspiracy was both self-concealing and affirmatively concealed

15 by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of

16 the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent

17 person to investigate whether a conspiracy existed, until October 26, 2009, when reports of the

18 investigations into price fixing in the optical disk drives industry were first publicly disseminated.

19      123.    None of the facts or information available to Plaintiff and members of the Class prior

20 to October 26, 2009, if investigated with reasonable diligence, could or would have led to the

21 discovery of the conspiracy alleged herein prior to October 26, 2009.

22      124.    Defendants also consummated affirmative acts of concealment of the conspiracy,

23 including, inter alia, periodically issuing press statements falsely asserting that Optical Disk Drive

24 Products were competitively priced. For example, on June 4, 2007 Sony issued a press release

25 stating, "The player (Sony's Blu-Ray Disk Player) gives a broader consumer segment the

26 opportunity to experience the exceptional quality of Blu-ray format at a **competitive price**."

27 (emphasis added)

28      125.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of

1 | any statute of limitations has been tolled with respect to any claims that Plaintiff and members of

2 | the Class have as a result of the anticompetitive conduct alleged in this Complaint.

### First Claim
### (Violation of the California Cartwright Act)

126.    Plaintiff realleges the paragraphs set forth above and incorporate them herein as if fully alleged.

127.    Defendants' acts in violation of the Cartwright Act and other laws as alleged herein were carried out, centered in, effectuated from and perfected largely within the State of California. Defendants' conduct within California injured all members of the Class throughout the United States. As a result, this claim for relief under California law is brought on behalf of all members of the Class, regardless of their residence and/or domicile.

128.    From at least as early as October 1,2005, and continuing until the present, Defendants and their co-conspirators entered into and engaged in a continuing conspiracy in violation of Section 16720 of the California Business and Professional Code. Defendants and their coconspirators acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, Optical Disk Drive Products at prices in excess of what they would have been absent Defendants' and their coconspirators conduct as alleged herein.

129.    The violations of Section 16720 of the California Business and Professions Code as alleged herein comprised a continuing unlawful trust and concert of action between and among the Defendants and their coconspirators. The substantial terms of this unlawful trust were to fix, raise, maintain and stabilize the prices of, and to allocate marlcets for, Optical Disk Drive Products.  In carrying out this illicit trust and conspiracy, Defendants and their coconspirators:

A. fixed, raised, maintained, and stabilized the price of Optical Disk Drive Products;

26

1    B. allocated markets for Optical Disk Drive Products among

2        themselves;

3    C. submitted rigged bids for the award and performance of certain

4        Optical Disk Drive Products contracts; and

5    D. allocated amongst themselves the production of Optical Disk

6        Drive Products.

7    Defendants' and their co-conspirators' actions caused:

8    A. a restraint of price competition in the sale of Optical Disk Drive

9        Products in the State of California and throughout the United States;

10    B. the fixing of artificially high, non-competitive prices for

11        Optical Disk Drive Products sold by Defendants and their co-

12        conspirators in the State of California and throughout the

13        United States; and

14    C. Plaintiff and the Class to be deprived of the benefit of free and

15        open competition in the pricing of Optical Disk Drive Products.

16        Plaintiff and the other members of the Class paid higher prices for

17    Optical Disk Drive Products than they would have paid in the absence of

18    Defendants' and their co-conspirators' acts.

19        130.    Plaintiff and the members of the Class have been injured in their

20    business and property as a direct and proximate result of Defendants' unlawful

21    conduct because they paid more for products containing Optical Disk Drive

22    Products than they otherwise would have paid but for Defendants' unlawful

23    conduct.

24        131.    Plaintiff and the Class seek treble damages and the costs of the suit,

25    including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and

26    Professions Code, as a result of Defendants' and their co-conspirators'

27    violations of Section 16720 of the California Business and Professions Code.

28

27

**Second Claim**
**(Violation of the California Unfair Competition Law)**

132.  Plaintiff realleges the paragraphs set forth above and incorporate them herein as if fully alleged.  Defendants' acts in violation of federal and state antitrust laws and other laws as alleged herein were carried out, centered in, effectuated from and perfected largely within the State of California. Defendants' conduct within California injured all members of the Class throughout the United States. As a result, this claim for relief under California law is brought on behalf of all members of the Class, regardless of their residence and/or domicile.

133.  Beginning no later than October I, 2005 and continuing through the present, Defendants and their co-conspirators violated Section 17200 by engaging in acts of unfair competition as alleged herein.

134.  This Claim is asserted pursuant to Sections 17203 and 17204 of the California Business and Professions Code.

135.  Plaintiff and the class seek restitution from Defendants for the acts alleged herein which violate Section 17200 of the California Business and Professions Code. The acts of Defendants and their co-conspirators as set forth herein are unfair, unlawful and/or fraudulent business acts or practices within the meaning of Califomia Business and Professions Code, Section 17200 and include, but are not limited to, the following:

A.  Violations of Section I of the Sherman Act;

B.  Violations of Section 16720, et seq., of the California Business and Professions Code;

C.  Other acts by Defendants and their co-conspirators as alleged herein which are otherwise unfair, unconscionable, unlawful or fraudulent within the meaning of Section 17200, California Business and Professions Code; and. Plaintiff and each of the Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which Defendants may have obtained as a result of such business acts or practices.

1     136.    Defendants' and their co-conspirators' unlawful and unfair business

2 practices are believed to be continuing and there is no reason to believe that

3 Defendants will not cease such conduct.

4     137.    The acts of Defendants and their co-conspirators as alleged herein

5 have caused and continue to cause Plaintiff and the members of the Class to pay

6 higher prices for Optical Disk Drive Products than they would

7 have paid but for these acts. Plaintiff and the members of the Class suffered injury

8 in fact and lost money or property as a result of such unfair competition. This

9 conduct violates § 17200 9f the California Business and Professions Code.

10     138.    Defendants and their co-conspirators have been uniustly enriched, and

11 Plaintiff and the Class are entitled to relief including restitution and/or

12 disgorgement of all revenues, earnings, profits, compensation and benefits which

13 may have been obtained by Defendants as a result of such business practices,

14 pursuant to the California Business and Professions Code, Sections 17203 and

15 17204.

16 <center>**PRAYER FOR RELIEF**</center>

17     WHEREFORE, the Plaintiff prays for relief as follows:

18     (1)    That the Court determine that this action may be maintained as a class action under

19 Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be certified as a

20 class representative and Plaintiff's counsel be appointed as counsel for the Class;

21     (2)    That the unlawful contract, combination or conspiracy alleged be adjudged and

22 decreed to be an unreasonable restraint of trade or commerce in violation of the Cartwright Act and

23 in violation of the Unfair Competition Law Section 17200;

24     (3)    That Plaintiff and the Class recover damages, as provided by law, determined to have

25 been sustained as to each of them, in an amount to be trebled in accordance with the antitrust laws,

26 and that judgment be entered against Defendants on behalf of Plaintiff and of the Class;

27     (4)    That plaintiff and the Class recover treble damages, as provided by law;

28

<center>29</center>
<center>CLASS ACTION COMPLAINT</center>

1    (5)    That Plaintiff and the Class recover their costs of the suit, including attorneys' fees,

2    as provided by law;

3    (6)    That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and

4    the respective officers, directors, partners, agents, and employees thereof and all other persons

5    acting or claiming to act on their behalf be permanently enjoined and restrained from continuing

6    and maintaining the combination, conspiracy, or agreement alleged herein;

7    (7)    That Plaintiff and members of the Class be awarded pre-judgment and post-judgment

8    interest, and that such interest be awarded at the highest legal rate from and after the date of service

9    of the initial complaint in this action; and

10    (8)    For such other and further relief as is just under the circumstances.

11                                   **JURY TRIAL DEMANDED**

12           Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

13    of all of the claims asserted in this Complaint so triable.

14    Dated: April 26, 2010

15

16                                   JULIO J. RAMOS (SBN No. 189944)
                                     ramosfortrustee@yahoo.com
17                                   LAW OFFICES OF JULIO J. RAMOS
                                     35 Grove Street, Suite 107
18                                   San Francisco, California 94102
                                     Telephone:    (415) 948-3015
19                                   Facsimile:    (415) 469-9787

20                                   Attorney for Plaintiff Don Cheung DBA Computer
                                     5000
21

22

23

24

25

26

27

28
                                          30
                            CLASS ACTION COMPLAINT